IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| COREY LEWIS COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM DANFORTH, Warden, Telfair | ) | |
| State Prison; SAM ZANDERS, Deputy | ) | |
| Warden, Telfair State Prison; LT. RODNEY | ) | CV 316-095 |
| MCCLOUD, Unit Manager, Telfair State | ) | |
| Prison; LIEUTENANT WILCOX, Telfair | ) | |
| State Prison, SERGEANT JORDAN- | ) | |
| THOMAS, Telfair State Prison; SERGEANT | ) | |
| TAYLOR, Telfair State Prison; OFFICER | ) | |
| BELL, Cert. Officer, Telfair State Prison; | ) | |
| JOHN DOE, Cert. Officer, Telfair State | ) | |
| Prison; JILL CRAVEY, Nurse, Telfair State | ) | |
| Prison; and DR. CHANEY, Telfair State | ) | |
| Prison, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**O R D E R**

_____

Plaintiff, an inmate incarcerated at Georgia Diagnostic & Classification Prison in

Jackson, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983

concerning events alleged to have occurred at Telfair State Prison ("TSP") in Helena, Georgia.

For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART**

Plaintiff's Motion to Compel Discovery (doc no. 112), **DENIES** Plaintiff's Motion for Leave

to File an Amended Complaint (doc. no. 121), and **DENIES AS MOOT** Plaintiff's Motion to Object (doc. no. 120).

## I.    BACKGROUND

Plaintiff asserts Eighth Amendment claims for failure to protect against Defendants Danforth, Wilcox, Zanders, McCloud, Jordan-Thomas, Taylor, Bell, and John Doe, Eighth Amendment claims for denial of medical care against Defendants Cravey and Dr. Chaney, a First Amendment retaliatory transfer claim against Defendant Danforth, and Fourteenth Amendment Claims for administrative segregation without a hearing against Defendants Danforth, Zanders, and McCloud. (See doc. no. 43.) The Court initially set June 6, 2017, as the deadline for discovery, but on the parties' joint motion, extended the deadline to August 5, 2017. (Doc. nos. 81, 95, 96.)

On May 18, 2017, Plaintiff served on Defendants 155 individual discovery requests totaling fifty-five pages and seeking extensive information and documentation. (See doc. no. 113-1, Ex. 1.) Defendants' responses were originally due on June 20, 2017; however, on June 19, 2017, Plaintiff agreed to extend Defendants' time to respond until July 19, 2017. (See doc. no. 118-1, Ex. A.) Defendants timely responded to Plaintiff's discovery requests on July 19, 2017, serving Plaintiff with nine sets of responses including extensive substantive information, 712 pages of records, five videos, and twenty-six audio recordings. (See doc. no. 188, Exs. B-K.)

On July 27, 2017, Plaintiff sent a letter to Defendants indicating he disagreed with their discovery responses. (Doc. no. 113-2, Ex. 2.) Plaintiff did not specify his disagreements but rather listed the seventy-four responses and cited the ostensibly applicable Federal Rules of Civil Procedure and Evidence next to each. (Id.) Despite these deficiencies, Defendants attempted to discern Plaintiff's perceived issues with the responses and addressed each request, along with additional documentation, by letter dated August 7, 2017. (See doc. no. 118-12, Ex. L.)

On August 6, 2017, Plaintiff sent a second letter requesting production of twenty-eight items, most of which were not included in his original discovery requests. (Doc. no. 113-3, Ex. 3.) Nonetheless, "in the spirit of liberal construction and compromise," Defendants broadly interpreted Plaintiff's correspondence requests and produced another seventy-four pages of documents and three additional recordings. (See doc. no. 118-13, Ex. M.)

Plaintiff filed his Motion to Compel on August 23, 2017, seeking production of "Electronically Stored Information . . . for inspection and copying the documents on May 18, 2017." (Doc. no. 112.) He argues the requests seek relevant information and Defendants waived all objections by not serving their responses within the original thirty-day deadline. (Doc. no. 114.) Defendants contend they timely served the responses within the extended time period allowed by Plaintiff, raised proper objections, and produced all relevant documents despite Plaintiff's vague requests. (Doc. no. 118.)

## II.    DISCUSSION

### A.    Plaintiff's Motion to Compel

Under Fed. R. Civ. P. 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." The Federal Rules of Civil Procedure strongly favor full discovery whenever possible, <u>Republic of Ecuador v. Hinchee</u>, 741 F.3d 1185, 1189 (11th Cir. 2013), and "[w]hen there is a doubt over relevancy, the court should still permit discovery," <u>Coker v. Duke & Co</u>., 177 F.R.D. 682, 685 (M.D. Ala. 1998). However, "the Court obviously cannot compel production of documents that do not exist" and "is generally entitled to rely on representations made in discovery requests and responses." <u>Hunter v. Corr. Corp. of Am.</u>, No. CV 314-035, 2015 WL 5042245, at *2 (S.D. Ga. Aug. 26, 2015) (internal citations omitted).

A discovery motion must "include the specific ground for the motion or objection" and "may not be made generally." Loc. R. 26.5(b)-(c). Plaintiff's motion does not satisfy this requirement because of its generalities, but like Defendants, the Court will endeavor to discern and address Plaintiff's concerns given his *pro se* status. (<u>See</u> doc. no. 114.) While not entirely clear, Plaintiff appears to take issue with Defendants' responses to the following discovery requests: Warden Danforth, Request No. 11; Deputy Warden Zanders, Request Nos. 4, 5, 6; Lieutenant Wilcox, Request No. 8; Sergeant Taylor, Request No. 10; Sergeant Jordan-Thomas, Request Nos. 6, 12, 13; Officer Bell, Request Nos. 6, 7, 8, 9, 10; Dr.

Cheney, Request No. 14; and all of the items requested in Plaintiff's August 6, 2017 letter. (See id. at 4). The Court addresses each in turn below, after first addressing Plaintiff's waiver argument.

### 1. Defendants Did Not Waive Objections.

Plaintiff granted Defendants an extension through July 19, 2017, to serve their discovery responses. (Doc. no. 118-1, Ex. A.) Defendants timely served their responses on July 19, 2017. (See doc. no. 188, Exs. B-K.) Plaintiff's consent to the extension forecloses any waiver argument.

### 2. Requests to Defendant Danforth

In dispute for Defendant William Danforth, TSP Warden, is Plaintiff's request no. 7 as follows:

> *7. Was a report made by any person concerning the incident? If so, state:*
> *(a) the name, title, identification number, and employer of the person who made the report;*
> *(b) the date and type of report made;*
> *(c) the name, address, and telephone number of the person whom the report was made; and*
> *(d) the name, address, and telephone number of each person who has the original or a copy of the report.*
>
> *RESPONSE: An Incident Report was made by Telfair State Prison Staff concerning the July 15, 2013 incident. Investigator Neal Thompson of the Criminal Investigations Division also made a Report of Investigation. The information requested is set forth in the produced documents DEF00485-00648 and is therefore ascertainable by Plaintiff pursuant to Federal Rule of Procedure 33(d).*

Warden Danforth produced 163 pages of responsive reports. Plaintiff does not identify why the production is deficient. Accordingly, the Court **DENIES** Plaintiff's motion to compel as to Defendant Danforth.

### 3. Requests to Defendant Zanders

Remaining in dispute for Defendant Sam Zanders, TSP Deputy Warden, are three requests as follows:

> 4. *State the names, titles, and duties of all staff and prison officials at Telfair State Prison from 2013 until response, who have responsibility for ensuring and preserving all institutional documentary and surveillance footage. If those duties are set forth in any job description, policy directive, or other document, produce the document(s).*
>
> *RESPONSE: Defendant objects to this Interrogatory as overly broad, unduly burdensome, seeking irrelevant information, and not proportional to the needs of Plaintiff's case. Plaintiff's request for the names, titles, and duties of all staff members responsible for ensuring and preserving documentary and surveillance footage at Telfair State Prison for the past four years is excessively burdensome and irrelevant to the issues in Plaintiff's Complaint. Objecting further, this Interrogatory is irrelevant as there have been no identified issues regarding preservation of surveillance footage. Subject to and without waiving said objections, Defendant is unaware of the "names, titles, and duties of all staff and prison officials at Telfair State prison from 2013 until response, who have responsibility for ensuring and preserving all institutional documentary and surveillance footage."*
>
> 5. *State the name, model, and capability of the institutional cameras mounted inside and outside B, D, also E Buildings/Dormitories at Telfair State Prison and the institutional hand-held cameras used by staff/prison officials. If the specific model mandated by Georgia Department of Corrections, produce directive, policies, and*

6

*document(s).*

*RESPONSE: Defendant objects to this Interrogatory as seeking irrelevant information and unlimited in time. Defendant further objects to providing information regarding security measure at Telfair State Prison to an inmate on the basis that this information may present a security risk. Objecting further, Defendant does not know what Plaintiff means by "capacity." Subject to and without waiving said objections, Defendant is unaware of the "name, model, and capacity of the institutional cameras mounted inside and outside B, D, also E Buildings/Dormitories at Telfair State Prison and the institutional hand-held cameras used by staff/prison officials." Responding further, Defendant is unaware of any Georgia Department of Corrections "directives, policies, and document(s)" mandating specific models of institutional cameras.*

*6. State all procedures known to staff/prison officials responsible for preserving documentary and surveillance footage that can be employed to use a magnetic device or any other method to delete surveillance footage, doctor surveillance video, retrieve, and electronically store footage. If these procedures are set forth in any policy, directive, or other document, produce the document(s).*

*RESPONSE: Defendants objects to this Interrogatory as vague, ambiguous, unintelligible, argumentative, and seeking irrelevant information. Defendant objects to any implication that any surveillance footage was deleted or doctored. Defendant further objects to this Interrogatory as unlimited in time or geographical scope. Objecting further, this Interrogatory is irrelevant as there have been no identified issues regarding preservation of surveillance footage. Subject to and without waiving said objections, Defendant is unaware of "procedures known to staff/prison officials responsible for preserving documentary and surveillance footage that can be employed to use a magnetic device or any other method to delete surveillance footage, doctor surveillance video, retrieve, and electronically store footage."*

Defendants have produced five video recordings of the incident on July 15, 2013. (Doc. no. 118, p. 6.) Plaintiff does not allege there are more. (Id.) The Court cannot compel Defendants to produce video recordings that do not exist. See Mathis v. Wachovia, 505-CV-163, 2006 WL 3747300, at *2 (N.D. Fla. Dec. 18, 2006) ("Clearly, if documents do not exist or are not in Defendant's possession or control, the court cannot compel Defendant to produce the documents.").

Plaintiff's requests for information concerning the recording and preservation of prison events would arguably be relevant to any allegation of discovery abuses by Defendants, but there are no such allegations. In addition, Defendant Zanders claims in his responses to have no knowledge of the information Plaintiff seeks. Accordingly, the Court **DENIES** Plaintiff's motion to compel as to Defendant Zanders.

### 4. Requests to Lieutenant Wilcox

Remaining in dispute for Defendant Ricky Wilcox, TSP Lieutenant Warden, is one request as follows:

> *8. If any photographs, charts, diagrams, plats, drawings, moving pictures, videotapes, models, or other depictions exist, whether prepared by you or by anyone else, which depict any scene, object or person which you contend is, or may be, relevant to any matter involved in this case, identify such depiction with sufficient specificity to enable plaintiff to frame a request for production of documents regarding the same, including, but not limited to, a description of the same, its date of creation, and the name, address, telephone number, place of employment and job title or capacity of the person creating it, and of all persons presently in possession of the same.*
>
> *RESPONSE [by reference to Response to Interrogatory No. 7]:*

> *Defendant objects to this Interrogatory as a misstatement of the facts. Specifically Plaintiff was not assaulted on July 15, 2013. Defendant also denies that Plaintiff was injured as a result of the July 15, 2013 incident, or that he caused any alleged injuries. Subject to and without waiving said objections, Defendant was called to the dining hall just prior to the July 15, 2013 incident because of reports of an argument amongst inmates. Defendant witnessed a large group of Muslim inmates stating that Plaintiff would not be allowed to go inside the D Building. Defendant requested the assistance of additional staff to handle the incident and instructed available staff to monitor the inmates on the sidewalk and large recreation yard. An inmate informed Defendant that several inmates were going to escort Plaintiff to segregation. As noted above, Defendant attempted to intervene in the incident, but was not able to do so. Defendant was concerned about the safety and security of the inmates and correctional officers. Defendant then instructed the other inmates not to harm Plaintiff. Plaintiff was then escorted to the E Building, where he was placed unharmed in a Quiet Room. Defendant's counsel will arrange for Plaintiff to view the surveillance footage of the July 15, 2013 incident involving Plaintiff.*

While Defendant Wilcox responded at length, he did not provide the information requested regarding any depictions of relevant scenes, objects, or persons. Accordingly, the Court **GRANTS** Plaintiff's motion to compel and **ORDERS** Defendant Wilcox to supplement his response within fourteen days to address Plaintiff's request for information regarding said depictions.

### 5. Requests to Defendant Taylor

Remaining in dispute for Defendant Thomas Taylor, TSP Sergeant, is one request as follows:

> *10. Produce photographs, video, and diagrams of the Subject assault-incident of civil action . . . cafeteria, recreation yard, dorms area also.*

9

> *RESPONSE: Defendant objects to this Interrogatory as a misstatement of the facts. Specifically, Plaintiff was not assaulted on July 15, 2013. Defendant further objects to producing the schematics of Telfair State Prison to an inmate, as this information could present a security risk to correctional staff and the facility. Subject to and without waiving the foregoing objections, Defendant's undersigned counsel will arrange for Plaintiff to view surveillance video of the July 15, 2013 incident involving Plaintiff.*

Defendants have produced five video recordings of the incident on July 15, 2013. (Doc. no. 118 at 6.) Plaintiff does not explain why schematics would provide relevant information not apparent from the video recordings themselves. In addition, Defendant has stated a valid concerning regarding the security implications of providing prison schematics to inmates. Accordingly, the Court **DENIES** Plaintiff's motion to compel as to Defendant Taylor.

### 6. Requests to Defendant Jordan-Thomas

Remaining in dispute for Defendant Karen Jordan-Thomas, TSP Sergeant, are three requests as follows:

> *6. Describe in detail the events of the Subject assault-incident including identifying the specific action or inaction by each responding prison official, and;*
> *(a) Describe in detail what you did during the Subject assault-incident including identifying any action or inaction you took to cause or prevent injuries plaintiff sustained.*
> *(b) Identify and produce each document also video footage that you claim evidences the conduct described in this interrogatory and the person with knowledge of such conduct.*
>
> *RESPONSE: Defendant objects to this Interrogatory as a misstatement of the facts. Specifically, Plaintiff was not assaulted*

10

*on July 15, 2013. Plaintiff was also not injured as a result of the July 15, 2013 incident, and Defendant did not cause any alleged injuries. Subject to and without waiving said objections, Defendant was standing at a gate directly outside of the dining hall when she heard several inmates arguing. The inmates exited the dining hall and headed towards the D building. At that time, pursuant to Lieutenant Wilcox's instructions, Defendant locked the gate in front of the D Building in order to prevent additional inmates from entering the recreation yard and escalating the incident. Plaintiff was near the D Building when other inmates escorted him to the E Building and placed him in the Quiet Room. Defendant also attempted to intervene verbally by instructing the inmates to disperse and return to their dormitories. Defendant's counsel will arrange for Plaintiff to view surveillance footage of the July 15, 2013 incident involving Plaintiff.*

Defendant Jordan-Thomas responded at length to this request, giving a full account of her participation in the incident. In addition, Defendants produced five video recordings of the incident. Left unanswered by the response, however, is whether Defendant produced, as requested, "each document that you claim evidences the conduct described in this interrogatory . . . ." Accordingly, the Court **GRANTS IN PART** Plaintiff's motion to compel as to request number six and **ORDERS** Defendant to supplement her response accordingly within fourteen days.

*12. Produce plaintiff's TSP Facility Initial Review Segregation Hearing, Administrative Segregation Assignment Memos in accordance with SOP IIB09-0001 and GDC Rule 125-3-1-.03.*
*(a) Produce surveillance footage of plaintiff going to, attending or returning from segregation hearing.*

*RESPONSE: Defendant objects to this Request as vague, ambiguous, and unlimited in time. Subject to and without waiving said objections, please see the attached Plaintiff's Telfair State*

*Prison Initial Review Segregation Hearing and Administrative Segregation Assignment Memo, Bates labeled DEF00709-00710. Defendant is not aware of any surveillance footage of Plaintiff "going to, attending or returning from segregation hearing."*

*13. Produce surveillance footage from E-2 dorm camera dated August 04, 2013 approximately 1:00 p.m[.] until 3:30 p.m.*

*RESPONSE: Defendant objects to this Request as seeking irrelevant information. Plaintiff's claim against Defendant relates to the July 15, 2013 incident, and surveillance footage from August 4, 2013, is irrelevant to this claim. Subject to and without waiving said objection, Defendant is not aware of any documents or surveillance footage responsive to this Request.*

Defendants have produced five video recordings of the alleged incident on July 15, 2013. Defendant Jordan-Thomas has stated well-founded objections to the production of any other footage. Accordingly, the Court **DENIES** Plaintiff's motion to compel as to request numbers twelve and thirteen.

### 7.    Requests to Defendant Bell

Remaining in dispute for Defendant Kenneth Bell, TSP CERT Officer, are five requests as follows:

*6.    Describe in detail the events of the Subject assault-incident including identifying the specific action or inaction by each responding prison official, and;*
*(a) Describe in detail what you did during the Subject assault-incident including identifying any action or inaction you took to cause or prevent injuries plaintiff sustained.*
*(b) Identify and produce each document also video footage that you claim evidences the conduct described in this interrogatory and the person with knowledge of such conduct.*

*RESPONSE: Defendant objects to this Interrogatory as a misstatement of the facts. Specifically, Plaintiff was not assaulted on July 15, 2013. Plaintiff was also not injured as a result of the July 15, 2013 incident, and Defendants did not cause any alleged injuries. Subject to and without waiving said objections, Defendant's counsel will arrange for Plaintiff to view footage of the July 15, 2013 incident involving Plaintiff.*

Defendant Bell did not provide the information requested concerning his description of the incident on July 15, 2013. Accordingly, the Court **GRANTS** Plaintiff's motion to compel as to request number six and **ORDERS** Defendant to supplement his response to this request within fourteen days.

*7. Produce surveillance footage recorded from camera mounted within and outside B-Building at Telfair State Prison on June 17, 2013 approximately between 3:00 p.m. and 6:00 p.m.*
*(a) Identify each inmate and prison officials involved in incident.*

*RESPONSE: Defendant objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of Plaintiff's case. Plaintiff's request to identify all inmates and prison officials appearing on surveillance footage for a three-hour period is excessively burdensome and would place a substantial burden on Defendant in terms of time and costs in light of any benefit, of which there will be none. Objecting further, this Request seeks irrelevant information as the incident at issue occurred on July 15, 2013. Subject to and without waiving said objections, Defendants are not in possession of the requested surveillance footage.*

*8. Produce surveillance footage recorded by responding officers to the Subject assault-incident on July 15, 2013 from institutional hand-held cameras.*
*(a) Identify each inmate and prison officials involved in footage.*

*RESPONSE: Defendant objects to this Interrogatory as a misstatement of the facts. Specifically, Plaintiff was not assaulted on July 15, 2013. Defendant further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of Plaintiff's case. Plaintiff's request to identify all inmates and prison officials appearing on surveillance footage is excessively burdensome and would place a substantial burden on Defendant in terms of time and costs in light of any benefit, of which there will be none. Defendant also objects to producing surveillance footage of other inmates. Subject to and without waiving said objections, Defendant's counsel will arrange for Plaintiff to view footage of the July 15, 2013 incident involving Plaintiff.*

*9. Produce surveillance footage recorded from camera mounted on outside D-Building at Telfair State Prison on July 15, 2013 approximately between 8:00 p.m. and 10:00 p.m.;*
*(a) Identify each inmate and prison officials depicted in footage.*

*RESPONSE: Defendant objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of Plaintiff's case. Plaintiff's request to identify all inmates and prison officials appearing on surveillance footage for a two-hour period is excessively burdensome and would place a substantial burden on Defendant in terms of time and costs in light of any benefit, of which there will be none. Defendant also objects to producing surveillance footage of other inmates. Subject to and without waiving said objections, Defendant's counsel will arrange for Plaintiff to view footage of the July 15, 2013 incident involving Plaintiff.*

*10. Produce surveillance footage recorded from cameras mounted within E-2 dorm and outside E-Building at Telfair State Prison on July 15, 2013 approximately 9:00 p.m. until July 16, 2013 10:30 a.m.*
*(a) Identify each inmate and prison officials depicted in footage.*

*RESPONSE: Defendant objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of Plaintiff's*

> *case. Plaintiff's request to identify all inmates and prison officials appearing on surveillance footage for a twelve and a half-hour period is excessively burdensome and would place a substantial burden on Defendant in terms of time and costs in light of any benefit, of which there will be none. Defendant also objects to producing surveillance footage of other inmates. Subject to and without waiving said objections, Defendant's counsel will arrange for Plaintiff to view footage of the July 15, 2013 incident involving Plaintiff.*

Defendants have produced five video recordings of the incident on July 15, 2013, as sought by Plaintiff in request numbers 8, 9, and 10. Any requests for video recordings not depicting the incident at issue are irrelevant and outside the scope of discovery, including the request in no. 7 for footage one month earlier on June 17, 2013. Accordingly, the Court **DENIES** Plaintiff's motion to compel as to request no. 7, 8, 9, and 10.

### 8.    Requests to Defendant Cheney

Remaining in dispute for Defendant Dr. William Cheney, the physician who treated Plaintiff at TSP, is one request as follows:

> *14.    Were any photographs, films and/or videotapes taken of the plaintiff or of the procedures complained of? If so, state the date(s) on which such photographs, films and/or videotapes were taken, who is displayed therein, who now has custody of them, and the name, address, occupation, and employer of the person taking them.*
>
> *RESPONSE: Defendant objects to this Interrogatory as unlimited in time, vague, and ambiguous. Subject to and without waiving said objections, Defendant is unaware of any photographs, films and/or videotapes of Defendant's appointments with Plaintiff.*

The Court cannot compel production of footage that does not exist and/or is unknown to Defendant. Accordingly, the Court **DENIES** Plaintiff's motion to compel as to Defendant Cheney.

### 9.    Plaintiff's Discovery Letter Dated August 6, 2017

Plaintiff further contends Defendants should be compelled to produce all documents requested in his August 6, 2017 letter. (<u>See</u> doc. no. 114, p. 4; 113-3, Ex. 3.) However, the majority of items identified in Plaintiff's letter were never requested in formal discovery. (*Compare* doc. 113-1, Ex. 1 *with* doc. 113-3, Ex. 3). The Court cannot compel production of discovery Plaintiff never formally requested. <u>James v. Wash Depot Holdings, Inc.</u>, 240 F.R.D. 693, 695 (S.D. Fla. 2006) ("Rule 37 does not authorize a court to compel documents . . . based on an informal discovery request.")

Moreover, Defendants liberally construed Plaintiff's letter and, on August 18, 2017, produced an additional seventy-four pages of documents and three recordings arguably encompassed by his discovery requests. (<u>See</u> doc. no. 118-13, Ex. M). Other than the general allegation "Defendants produced a small portion of specifically requested documents but overall continue incomplete disclosure tactic," Plaintiff points to nothing specific to suggest Defendants are withholding discovery or their current voluminous production is deficient. Absent such specificity, the Court is entitled to rely on Defendants' representations they have fully complied with Plaintiff's discovery requests. <u>See Hunter</u>,

2015 WL 5042245, at *2.  Accordingly, the Court **DENIES** Plaintiff's motion to compel as to the requests in his August 7, 2017 letter.

### B.    Plaintiff's Motion to Object

Plaintiff filed a "Motion to Object" (doc. no. 120) to this Court's September 1, 2017 Order denying without prejudice Plaintiff's Motion for Leave to Add/Join Defendants (doc. no. 119).   As an initial matter, it is unclear what relief Plaintiff seeks in his motion. Regardless, because the Court denied Plaintiff's original motion to amend without prejudice and is now considering Plaintiff's refiled motion to amend, the Court **DENIES AS MOOT** Plaintiff's Motion to Object.  (Doc. no. 120.)

### C.    Plaintiff's Motion for Leave to File an Amended Complaint

Plaintiff has filed a Motion for Leave to File an Amended Complaint and to substitute Earnest Wesley, Robert Pittman, Terry Cason, David Tucker, Ryan Livingston, and Avery Daniels for the John Doe Officers he named in his original and second proposed amended complaint.  (Doc. no. 121.)  A plaintiff seeking to amend his complaint after a deadline set by a scheduling order must demonstrate good cause under Federal Rule of Civil Procedure 16(b).  See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 (11th Cir. 2009); Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998).  "Rule 16(b)'s good cause standard 'precludes modification unless the schedule cannot be met despite the

diligence of the party seeking the extension.'" Pugh v. Kobelco Const. Mach. Am., LLC, 413 F. App'x 134, 135 (11th Cir. 2011) (quoting Sosa, 133 F.3d at 1418).

Here, Plaintiff has shown good cause and diligence. Plaintiff received discovery on July 28, 2017, identifying Earnest Wesley, Robert Pittman, Terry Cason, David Tucker, Ryan Livingston, and Avery Daniels as potential parties to this lawsuit, and filed his first Motion for Leave to Add/Join Defendants one month later. (Doc. no. 117; doc. no. 121, p. 1.) Moreover, Plaintiff had no way to investigate and identify these potential defendants except through discovery from the current Defendants. These circumstances show Plaintiff was diligently pursuing the identity of these potential defendants through discovery and sought to add them soon after he discovered their identity. Thus, Plaintiff has shown good cause under Rule 16(b) for filing his Motion to Amend after the deadline in the Court's scheduling order.

However, even though Plaintiff can show the good cause necessary to excuse his failure to comply with the Court's scheduling order, his amendment to substitute Earnest Wesley, Robert Pittman, Terry Cason, David Tucker, Ryan Livingston, and Avery Daniels is futile. Under Federal Rule of Civil Procedure 15(a), a party may amend a pleading more than twenty-one days after serving it "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts should freely allow amendment. See Carter v. Broward Cty. Sheriff's Dep't Med. Dep't, 558 F. App'x 919, 923 (11th Cir. 2014) (citing Forman v. Davis, 371 U.S. 178, 182 (1962)); see also Fed. R. Civ. P. 15(a)(2) ("The court

18

should freely give leave when justice so requires.").  However, "[a] . . . court may deny such leave where there is substantial ground for doing so, such as undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment."  Muhammad v. Sapp, 494 F. App'x 953, 958 (11th Cir. 2012) (quoting Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008)).  An amendment is futile when the pleading that it seeks to amend would still be subject to dismissal if the amendment were permitted.  See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) ("A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed.'") (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007)).

Here, Plaintiff's amendment would be futile because the statute of limitations has run on his claims.  It is "well-settled that § 1983 claims filed in Georgia are governed by the same two-year statute of limitations for personal-injury actions."  Flowers v. Fulton Cty. Sch. Sys., 654 F. App'x 396, 401 (11th Cir. 2016) (citing Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986)).  Plaintiff's claims arise out of events occurring between July 15, 2013 and August 9, 2013.  (See doc. no. 1, pp. 11-27; doc. no. 10, pp. 8-11; doc. no. 38-1, pp. 1-13.)  Therefore, the statute of limitations expired on August 9, 2015.

Moreover, Plaintiff's amendment does not relate back to the date of his original complaint.  Generally, an amendment changing the name of a party relates back to the original pleading if the party "knew or should have known that the action would have been

brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). However, "[a] plaintiff's amendment to identify parties previously designated as 'John Doe' defendants in the complaint does not relate back to the filing of the original complaint under Federal Rule of Civil Procedure 15 because the amendment is made to correct the plaintiff's lack of knowledge about whom to sue, not a mistake by the defendant in identifying the proper party." Bloodworth v. United States, 623 F. App'x 976, 979 (11th Cir. 2015) (citing Wayne v. Jarvis, 197 F.3d 1098, 1103-04 (11th Cir. 1999), overruled in part on other grounds by Manders v. Lee, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003) (en banc). As the Eleventh Circuit explained,

> [C]ommentary [to Rule 15] implies that the rule is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification. Because [Plaintiff]'s lack of knowledge was not an error, a misnomer, or a misidentification, his amendment does not come within Rule 15(c)(3)(B). While we have stated that we read the word "mistake" in Rule 15(c) liberally, we do not read the word "mistake" to mean "lack of knowledge." For these purposes, ignorance does not equate to misnomer or misidentification.

Wayne, 197 F.3d at 1103 (11th Cir. 1999) (internal quotations and citations omitted).

Because merely changing the name of John Doe Defendants does not relate back to Plaintiff's original complaint, his claims against Earnest Wesley, Robert Pittman, Terry Cason, David Tucker, Ryan Livingston, and Avery Daniels, fall outside the two-year statute of limitations that expired on August 9, 2015. Accordingly, these parties would be ripe for dismissal if added, and amendment by Plaintiff to add them is futile. See Coventry First,

<u>LLC</u>, 605 F.3d at 870.  Therefore, the Court **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint.  (Doc. no. 121.)

## III.   CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Compel Discovery (doc no. 112), **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint (doc. no. 121), and **DENIES AS MOOT** Plaintiff's Motion to Object (doc. no. 120).  Defendants shall produce the required answers and documentation to Plaintiff <u>within 14 days</u> of this Order.  In addition, the Court **LIFTS** the stay on the dispositive motion deadline.  The parties shall have through and including December 29, 2017 to file motions for summary judgment.

SO ORDERED this 15th day of November, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA